## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| SUSAN LAWHORN on behalf of K.S., her adoptive son, a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Docket No. 1:15-cv-159-NT ) |
| REGIONAL SCHOOL UNIT 34, SCOTT GORDON, and BRETT HOOGTERP, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before the Court is the Defendants' motion to dismiss the Plaintiff's Amended Complaint. For the reasons stated below, the motion is **DENIED**.

## FACTUAL ALLEGATIONS

K.S., on whose behalf this suit is brought, is a 17-year-old African-American male who suffers from Attention Deficit Hyperactivity Disorder ("**ADHD**"). Am. Compl. ¶¶ 1, 29 (ECF No. 9). K.S. qualifies as a child with a disability under the Individuals with Disabilities Education Act (the "**IDEA**"), 20 U.S.C. § 1400 et seq., and has been educated according to an individualized education plan ("**IEP**")[1] since kindergarten. Am. Compl. ¶¶ 30-31.

---

[1]    Under the IDEA, school districts in states that elect to receive certain federal funds must regularly formulate an IEP for each child with a disability within their jurisdiction. *See* 20 U.S.C. § 1412(a)(1) (generally requiring states that accept IDEA funding to ensure that a "free appropriate public education" is available to all children between the ages of 3 and 21 residing in the state); § 1401(9) (defining "free appropriate public education" to refer to "special education and related services" that, among other things, have been provided "in conformity with [an] [IEP]"); § 1414(d) (defining and establishing the minimum requirements for an IEP).

When K.S. was a young boy, his mother was unable to care for him, and his grandmother, Plaintiff Susan Lawhorn, adopted him. Am. Compl. ¶ 3. Lawhorn lives in New York City. Am. Compl. ¶ 3. At the age of 7, Lawhorn sent K.S. to live with her son Melvin Stokes (also K.S.'s uncle). Am. Compl. ¶¶ 9-10. Stokes, who lives in Milford, Maine, was already caring for his own children and K.S.'s older brother. Am. Compl. ¶¶ 10, 11. Lawhorn and Stokes decided it would be best for K.S. to grow up with a father figure in the home, alongside his brother and cousins. Am. Compl. ¶ 11.

After K.S. arrived in Maine, Stokes requested that the Milford School Department ("**Milford**") enroll K.S. as a public school student. Am. Compl. ¶ 14. Stokes disclosed that K.S.'s sole legal guardian lived in New York and explained the reasons for the move. Am. Compl. ¶ 15.

Milford granted Stokes's request and K.S. attended Milford's elementary school through the eighth grade. Am. Compl. ¶¶ 16-17. Milford never again asked Stokes about K.S.'s legal guardianship and sent all of K.S.'s transcripts, evaluations, permission slips, and school records to Stokes, not Lawhorn. Am. Compl. ¶¶ 18-19.

Milford has no public high school and instead pays tuition for its students to attend neighboring high schools, including Old Town High School ("**Old Town**"), which is operated by Regional School Unit 34 ("**RSU 34**"). Am. Compl. ¶¶ 20-21. Though two school districts[2] have no written contract, RSU 34 has long accepted

---

[2]     I use the colloquial term "school district" to refer to what Maine's education statutes refer to as a "school administrative unit."

Milford students to attend Old Town, an arrangement envisioned and authorized by Maine's public education statutes. Am. Compl. ¶¶ 22, 26-27.

When K.S. reached the ninth grade in the fall of 2011, Old Town accepted him as a tuition student. Am. Compl. ¶ 27. He struggled in school, but became involved in Old Town's football, basketball, and track teams and took on a part-time job. Am. Compl. ¶¶ 27, 65.

K.S.'s 2012-2013 IEP contained a provision purporting to require him to abide by a "behavior contract" or face removal from Old Town. Am. Compl. ¶ 32. In the fall of 2013, when K.S. was in the eleventh grade, Old Town suspended him from school for five days for allegedly making a video of another student smoking marijuana and posting it to Instagram, a social media website that allows users to upload and share pictures and videos.[3] Am. Compl. ¶ 33.

When K.S. returned to school at the end of his five-day suspension, Defendant Scott Gordon, Old Town's principal, informed him that he could no longer attend Old Town. Am. Compl. ¶ 36. K.S. was never given any notice, hearing, or explanation. Am. Compl. ¶¶ 36-38. Principal Gordon later told Stokes that RSU 34 had no obligation to educate K.S. because of his status as a tuition student. Am. Compl. ¶ 49.

---

[3]     The substance abuse policy in Old Town's student handbook prohibits distributing, dispensing, possessing, using, and being under the influence of controlled substances, but does not address making or sharing videos of others using controlled substances. Am. Compl. ¶ 34. RSU 34 has never alleged that K.S. distributed, dispensed, possessed, used, or was under the influence of marijuana. Am. Compl. ¶ 35.

Later in the school year, Stokes submitted an application for K.S. to attend Bangor High School ("**Bangor**"). Am. Compl. ¶ 52. Though Bangor officials initially told Stokes that K.S. could be enrolled after his application was processed, Bangor ultimately denied the application. Am. Compl. ¶¶ 52-57. A Bangor administrator told Stokes that Defendant Brett Hoogterp, Old Town's vice-principal, told Bangor's vice principal that K.S.'s discipline at Old Town was "unfinished business" and that Bangor should not enroll K.S. until it was resolved. Am. Compl. ¶ 56.

With the exception of a few adult ed classes, K.S. did not attend class for the remainder of the 2013-2014 school year, missing 144 days of school. Am. Compl. ¶¶ 58-59. He was unable to participate in football, basketball or track. Am. Compl. ¶¶ 66-67. He lost his part-time job and many of his old friends. Am. Compl. ¶¶ 72, 74. His relationship with his uncle became strained and he began hanging out on the street. Am. Compl. ¶¶ 64, 73.

K.S. enrolled in and began attending Bangor the following year. Am. Compl. ¶ 61. He is currently in counseling for the emotional damage caused by his departure from Old Town. Am. Compl. ¶ 75.[4]

---

[4]    Plaintiff Lawson later requested a due process hearing against Milford and RSU 34 under the IDEA, alleging that they had denied K.S. a free appropriate public education. Am. Compl. ¶ 62. The state hearing officer dismissed the request as to RSU 34 on the basis that K.S. does not live in the district. Am. Compl. ¶ 62.

## STATUTORY BACKGROUND

A series of interrelated Maine education statutes, including provisions governing student residency, tuition students, and student discipline, provide context to the factual allegations related above.

With respect to residency, 20-A M.R.S. § 5202 supplies the baseline rule that any person under the age of 18 is eligible to attend school in the school district "where the person's parent resides," with "parent" defined to mean "the parent or guardian with legal custody." 20-A M.R.S. § 5202. A later section, 20-A M.R.S. § 5205, governs the eligibility of students who do not live with their parents or legal guardians. The version of Section 5205 in force when K.S. first enrolled in Milford's schools provides that a child "residing with [a] person who is not the student's parent . . . is considered a resident of the school administrative unit where the student resides if the superintendent of the unit determines that it is in the best interest of the student . . . ." 20-A M.R.S.A. § 5205(2) (2002). That test is met if the child "is residing in the school administrative unit for other than just education purposes" (i.e. if the child did not move to the school district *only* to attend its schools) and one of two justifying circumstances are present: (1) if "[i]t is undesirable and impractical for that student to reside with the student's parent"; or (2) if "[o]ther extenuating circumstances exist that justify residence in the unit." *Id.* A student's parent may appeal the superintendent's decision to Maine's education commissioner.[5] *Id.*

---

[5]     The Legislature amended the statute in 2011, but it remains largely the same. *See* P.L. 2011, ch. 502, § 1. The revised version added an additional basis for a superintendent to decide in a student's favor (if "[t]here is a safety reason for the student not to reside with the student's parent") and imposed additional procedural safeguards to protect the rights of students (requiring that a superintendent

With respect to tuition, 20-A M.R.S. § 5204 governs the rights of students living in school districts without high schools to attend other school districts' high schools as tuition students. One of its subsections, 20-A M.R.S. § 5204(4), provides as follows:

> A school administrative unit that neither maintains a secondary school nor contracts for secondary school privileges pursuant to chapter 115[6] shall pay the tuition, in accordance with chapter 219, at the public school or the approved private school of the parent's choice at which the student is accepted.

20-A M.R.S. § 5204(4). In turn, chapter 219 leaves a school district's decision of whether to accept tuition students to the district's board, 20-A M.R.S. § 5801, and requires a school district that has elected to receive tuition students from another school district to provide the sending district at least two years' notice before discontinuing acceptance. 20-A M.R.S. § 5803.

Finally, with respect to student discipline, 20-A M.R.S. § 1001 provides that a school district must base a decision to expel a student on one of a limited number of criteria, such as that the student was "deliberately disobedient or deliberately disorderly," committed an "infraction[ ] of violence," or "possesse[d], furnishe[d] or traffick[ed]" in an illegal drug. 20-A M.R.S. § 1001(9).

---

reach and provide written notice of a decision within 10 days, and, if the decision is a denial, include the reason for the denial and an explanation of the right of appeal to Maine's education commissioner). 20-A M.R.S. § 5205(2).

[6]     Based on the Plaintiff's allegation that RSU 34 and Milford have "a longstanding relationship . . . involving an exchange of tuition for educational services," but no "written contract," Am. Compl. ¶ 22, Milford appears to fall into this category.

## PROCEDURAL HISTORY

The Plaintiff filed this lawsuit on K.S.'s behalf in April of 2015. Compl. (ECF No. 1). In lieu of filing an answer, the Defendants moved to dismiss all the counts against them, contending that the Plaintiff lacks standing and did not state any claim entitling K.S. to relief. Defs.' Mot. to Dismiss (ECF No. 7). The Plaintiff filed both a response in opposition and an amended complaint. Pl.'s Response in Opp'n (ECF No. 8); Am. Compl. The Defendants asserted in a reply brief that the amended complaint is deficient for the same reasons as the initial complaint. Defs.' Reply 1 n.1 (ECF No. 10).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a civil complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A 'short and plain' statement need[ ] only" provide "enough detail to" allow "a defendant [ ] 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Federal Rule 12(b)(6) is warranted only if a complaint fails to meet the limited notice pleading requirement imposed by Federal Rule 8(a)(2). *Id.* at 11–12. In making this determination, the court must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Silverstrand Invs. v. AMAG Pharm., Inc.*, 707 F.3d 95, 101 (1st Cir. 2013) (internal quotation marks and citations omitted).

7

Federal Rule 12(b)(1) permits a party to move to dismiss a complaint on the grounds that the court lacks subject matter jurisdiction to hear the case because the plaintiff lacks standing. *See Blum v. Holder*, 744 F.3d 790, 795–96 (1st Cir. 2014). In assessing standing, the court must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). In practice, the standard applied at the motion-to-dismiss phase to determine whether a plaintiff has standing is generally the same as the standard used to determine whether a plaintiff stated a claim upon which relief can be granted under Federal Rule 12(b)(6). *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

## DISCUSSION

The Amended Complaint lists three counts. In the first, brought under 42 U.S.C. § 1983,[7] the Plaintiff alleges that Principal Gordon and Vice-Principal Hoogterp violated the Due Process Clause of the Fourteenth Amendment by expelling K.S. from Old Town without notice or an opportunity to be heard.[8] In the second

---

[7]     Section 1983 provides a cause of action to individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of" state law. 42 U.S.C. § 1983.

[8]     The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without process of law." U.S. Const. amend. XIV. Courts have interpreted this provision to create a right to at least "some kind of notice and some kind of opportunity to be heard" whenever "a [constitutionally] protected property interest is at stake." *Clukey v. Town of Camden*, 717 F.3d 52,

count, also brought under Section 1983, the Plaintiff alleges that Principal Gordon and Vice-Principal Hoogterp violated the Equal Protection Clause of the Fourteenth Amendment by treating K.S. differently than other students based on an illegitimate distinction between students who are residents of RSU 34 and students from outside RSU 34 attending Old Town as tuition students under 20-A M.R.S. § 5204(4). In the third count, brought under parallel anti-discrimination provisions in the Americans with Disabilities Act (the "**ADA**"), 42 U.S.C. § 12132,[9] and the Rehabilitation Act of 1973 (the "**Rehab Act**"), 29 U.S.C. § 794,[10] the Plaintiff alleges that Defendant RSU 34 impermissibly discriminated against K.S. on the basis of his disability by including a condition in his IEP that purported to lower the standards under which he could be expelled.

The Defendants move to dismiss all the claims against them, arguing that K.S. has pled himself out of court because the facts alleged in the complaint establish, as a matter of law, both: (1) that K.S. did not suffer a cognizable injury in fact, as

59 (1st Cir. 2013). An individual holds a constitutionally protected property interest in any government benefit to which he or she has a "legitimate claim of entitlement." *Id.* at 55. An individual has a "legitimate claim of entitlement" to a benefit if the decision to grant or deny it is limited by specific conditions provided for under substantive state or federal law, rather than left to the unguided discretion of state officials. *Compare Perry v. Sindermann*, 408 U.S. 593, 599-604 (1972) (state employee with tenure protections provided by state law has constitutionally protected property interest in continued employment) *with Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 576-78 (1972) (at-will state employee has no constitutionally protected property interest in continued employment).

9    42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

10    29 U.S.C. § 794 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

9

required to demonstrate standing under Article III of the Constitution; and (2) that K.S. is not entitled to relief under any of the legal theories the Plaintiff advances on his behalf. For the reasons discussed below, the Defendants' motion fails.

## I.   Standing

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III. Generally, this limitation is intended to ensure that a plaintiff bringing a lawsuit before a federal court has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Under Article III, there is a "case" or "controversy" only where the plaintiff establishes the three elements that comprise the "irreducible constitutional minimum" of standing: (1) "that [the plaintiff] suffered an injury in fact"; (2) "that the injury is fairly traceable to the actions of the defendant"; and (3) "that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal citations and quotation marks omitted).

The first element, injury in fact, is met where there is "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 167 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). There is "ordinarily little question" that the plaintiff has suffered an injury in fact if "the plaintiff is himself an object" of a challenged government action. *Lujan*, 504 U.S. at 561-62. As a general matter, the

"contours of the injury-in-fact requirement are generous, and . . . even a slight injury suffices to confer standing." *Libertad v. Welch*, 53 F.3d 428, 439 (1st Cir. 1995) (internal citations and quotation marks omitted). The Supreme Court has found the requirement satisfied even where plaintiffs have sought to vindicate invasions of relatively ephemeral interests. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) (company claiming to be injured by an agency rule that did not affect it directly but potentially threatened its market share suffered injury in fact); *Sierra Club v. Morton*, 405 U.S. 727 (1972) (members of an environmental group claiming road through national park would make their use of park less pleasurable suffered injury in fact).

Here, it is clear that K.S.'s alleged mid-school-year exclusion from Old Town is an invasion of a judicially cognizable interest[11] that is concrete, particularized, and actual. The Plaintiff has pled an injury in fact sufficient to raise his claims.

---

[11]    The Supreme Court, which like all federal courts has an obligation to ensure the elements of constitutional standing are satisfied before assuming jurisdiction over any dispute, *see Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 109 (2001), has repeatedly taken jurisdiction over cases where the plaintiff's claimed injury was an invasion of an interest in attending a specific public school, including at least one where the Court ultimately determined on the merits that the plaintiff had no right to attend that school. *See, e.g., Martinez v. Bynum*, 461 U.S. 321 (1983) (taking jurisdiction over plaintiff-schoolchild's claim that he had a constitutional right to attend school in the town where his sister lived, though ultimately determining he held no such right); *Goss v. Lopez*, 419 U.S. 565 (1975) (taking jurisdiction over plaintiff-schoolchildren's claims that they had a constitutional right to due process before being suspended from school).

## II.     Failure to State a Claim

The lynchpin of the Defendants' failure-to-state-a-claim arguments is that because K.S.'s legal guardian does not live in a Maine school district, K.S. is ineligible to attend Maine's public schools. Defendants argue that: (1) the Plaintiff's procedural due process claim cannot succeed because no *other* source of law gives K.S. a constitutionally protected interest in receiving a public education in Maine; and (2) the Plaintiff's ADA and Rehab Act claims cannot succeed because K.S.'s statutory ineligibility means that he is not otherwise "qualified" to receive the services offered by Old Town, a necessary element of a disability discrimination claim.[12]

The Defendants' underlying premise is flawed, as it fails to account for 20-A M.R.S. § 5205, the provision governing students who live with a person other than their legal guardian. As related in the statutory background section, Section 5205 provides that a student in that situation must be considered a resident of the school district where he or she lives if the local superintendent finds that it would be in his or her best interest under the relevant statutory criteria.

The Defendants address Section 5205 for the first and only time in their reply brief:

> What Plaintiff does not do (and cannot do because it did not happen) is plead that the superintendent of the District ever made the determination that it was in the best interests of K.S. that he attend school in Milford.

Defs.' Reply 2.

---

[12]     Though the Defendants assert that K.S. failed to state an equal protection claim, they do not explain why, and I do not independently examine the issue.

That interpretation is too cramped. Nothing in the pre-2011 version of Section 5205 requires a superintendent's eligibility determination to take a particular form. Nothing in either the pre- or post-2011 versions of Section 5205 requires an enrollee to seek a best-interest-of-the-student determination more than once in his or her academic career. And nothing in the statutory scheme suggests that a receiving school district has any basis to challenge a best-interest-of-the-student determination by a sending school district.

The Plaintiff alleges that Milford was aware of K.S.'s family situation but allowed K.S. to enroll in its schools through the eighth grade and payed his tuition pursuant to 20-A M.R.S. § 5204 thereafter. Under the liberal pleading standard prescribed by Federal Rules 8(a)(2) and 12(b)(6), it is reasonable to infer that Milford's superintendent determined, either explicitly or implicitly, that it was in K.S.'s best interest to live with his uncle in Maine. The opposite conclusion—that Milford enrolled K.S. and continues to pay his tuition at taxpayer expense in error—would require drawing inferences against the Plaintiff.

Because the underlying premise of the Defendants' 12(b)(6) arguments fails, dismissal is not warranted.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

13

Dated this 18th day of August, 2015.